**F I L E D**
3-14-13

MAR 1 4 2013

Judge Sharon Johnson Coleman
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 12 CR ~~XXX~~ 484 |
| | ) | Judge ~~TBD~~ SHARON JOHNSON COLEMAN |
| vs. | ) | |
| | ) | |
| LUIS F. PLASCENCIA | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney's Office for the Central District of California and the Acting United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO and defendant LUIS F. PLASCENCIA, and his attorney, BETH JANTZ, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The information in this case charges defendant with stalking, in violation of Title 18, United States Code, Sections 2261A(2) and (b)(5).

3.      Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to waive the right to indictment by a grand jury, agrees to consent to transfer of this matter pursuant to Fed. R. Crim. P. 20 to the United States District Court for the Northern District of Illinois, Eastern Division, and enter a voluntary plea of guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with interstate stalking, in violation of Title 18, United States Code, Sections 2261A(2) and (b)(5).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Between on or about March 9, 2012, and on or about June 25, 2012, defendant, while residing in Chicago, Illinois, sent numerous threatening and harassing e-mail messages to victim K.R. Defendant sent these messages with the intent to harass and to cause victim K.R. to feel substantial emotional distress, fear of death, and fear of bodily injury to herself and to her immediate family members.  During this period, victim K.R. was located in the Los Angeles area of California.

Defendant's course of conduct included, among other things, the following:

a.     On or about March 16, 2012, defendant PLASCENCIA sent victim K.R. an e-mail message that stated in part:

2

> I DON'T GIVE A FUCK WHAT YOU HAVE TO SAY OR DID//// I
> WARNED YOU FROM THE BEGINNING AND WILL DO WHAT I
> SAID////// YOU HAVE UNTIL APRIL 9 BEFORE I START RELEASING
> ALL YOUR PERSONAL INFORMATION////

The message also described the victim as a "fucking whore" and a "drunk whore." The

message accused the victim of having sex with victim E.S., one of the victim's friends.

Defendant PLASCENCIA claimed to have a video tape of the victim having sex with victim

E.S. and threatened to release it. The message then listed the victim's former address and

the names and current addresses of the victim's stepmother and father.

      b.    On or about March 16, 2012, defendant sent victim K.R. an e-mail

message that stated the victim was "fat and ugly," described the victim as "a whore and a

slutty bitch," and stated in part:

> I HOPE YOU DIE IN AN AUTOMOBILE ACCIDENT AND CRUSHES
> YOUR UGLY FACE THROUGH THE WINDSHIELD AND A LARGE
> PIECE OF GLASS CUTS YOUR THROAT///

      c.    On or about March 16, 2012, defendant sent victim K.R. an e-mail

message that stated in part:

> YOURE A FUCKIN' SKANK SLEEPING AROUND WITH THOSE
> PROMOTERS AND YOU HAVE NO RESPECT FOR YOURSELF//// YOU
> HAVE NO CLASS WHATSOEVER/// I HOPE YOU CATCH AIDS WHILE
> SLEEPING AROUND WITH THOSE PROMOTERS AGENTS
> CELEBRITIES AND PHOTOGRAPHERS////

      d.    On or about March 16, 2012, defendant sent victim K.R. an e-mail

message that described the victim as "a two-faced and deceitful person to your family and

friends," then stated in part:

I KNOW WHERE YOU ARE MOST OF THE TIME AND IF I DON'T//// I CAN EASILY FIND OUT FROM ONE OF YOUR FRIENDS////

     e.    On or about March 16, 2012, defendant sent victim K.R. an e-mail message that called the victim "a drunkin' whore" and stated in part: "LOOK AT HOW UGLY YOUR MOTHER IS///// SHE LOOKS LIKE YOU//// A WHORE////" and "UGLY//// YOUR SISTERS ARE A BUNCH OF WHORES AND SKANKS///"

     f.    On or about March 16, 2012, defendant sent victim K.R. an e-mail message that stated in part: "I FUCKED YOUR MOTHER/// YOU FUCKIN' WHORE/// SLUT///."

     g.    On or about March 19, 2012, defendant sent victim K.R. an e-mail message that stated in part:

> YOU JUST PISSED ME OFF//// I WILL FUCKIN' KILL YOU///// DO YOU UNDERSTAND ME?????????//// I WILL STAB YOU IN THE HEART AND CUT YOUR FUCKING' HEAD OFF//// YOU FUCKIN' BITCH//// I WILL KILL YOUR PARENTS [the first names of the victim's stepmother and father]//// I WILL CUT THEM TO PIECES//// YOU WAIT AND SEE//// YOURE ALL GOING TO FUCKIN' DIE//// FUCKIN' WHORE//// YOURE AS GOOD AS DEAD///

The message also listed the victim's former address and the names and current addresses of the victim's stepmother and father and the name and former address of victim K.R.'s friend.

     h.    On or about March 20, 2012, defendant sent victim K.R. an e-mail message that stated in part:

> YOUR PARENTS NAME AND ADDRESS WILL BE NEXT FOLLOWED BY YOURS//// DON'T FUCK WITH ME//// I WARNED YOU BEFORE ABOUT DOING THIS AND WILL CONTINUE MY WRATH UNTIL YOU

> STEP DOWN AS A MODEL GO BACK TO COLLEGE AND MOVE BACK NEAR YOUR FAMILY IN PHILLY////
>
> MY DEMANDS ARE ///STOP MODELING/// GO BACK TO COLLEGE AND BE SOMEONE ELSE//// DELETE ALL OF YOUR ACCOUNTS/// THIS INCLUDED YOUR F/B MODELMAYEHM TWITTER AND YOUR WEBSITES////

Defendant also called the victim a "slut," a "fuckin' whore," and a "gutless bitch," while deriding excerpts from the victim's web page. The message correctly identified the victim as having friends and family in a certain city. The message continued: "I KNOW WHERE YOU ARE MOST OF THE TIME AND IF I DON'T////I CAN EASILY FIND OUT FROM ONE OF YOUR FRIENDS////." The message then stated: "ILL BE AROUND YOUR BIRTHDAY PARTY," and listed the victim's date of birth.

    i.  On or about March 21, 2012, defendant sent victim K.R. an e-mail message that stated in part:

> IM GOING TO STAB YOU IN THE FUCKIN' HEART AND CUT YOUR HEAD OFF////
>
> I WILL KILL YOUR PARENTS AND CUT THEM TO PIECES WITH A HAND SAW//// DO YOU FUCKIN' UNDERSTAND ME????/// DON'T FUCK WITH ME OR GET ME MAD//// IF MY DEMANDS ARE NOT MET BY YOU SOON//// I WILL KILL THEM AND YOU//// GOT IT?????/// FUCKIN' WHORE//// YOU FUCKIN' SLUT BAG/// I WILL KILL YOU ALL//// YOU MARK MY FUCKIN' WORDS/// I KNOW WHERE YOU ARE MOST OF THE TIME AND WILL KILL YOU WHEN THE LEAST YOU EXPECT IT//// YOU ARE VERY EASY TO GET TO///// YOU KNOW WHAT MY DEMANDS ARE//// TIME IS RUNNING OUT////

j.      On or about March 22, 2012, defendant sent victim K.R. an e-mail message that listed the names and addresses of the victim's father and two sisters and a friend.

k.      On or about March 22, 2012, defendant sent victim K.R. an e-mail message that stated in part:

> DID YOU SEE THAT BITCH????/// I POSTED YOUR PARENTS NAME AND ADDRESS ON YOUR WALL/// DON'T FUCK WITH ME/// CUNT/// I FUCKED YOUR MOTHER/// YOU FUCKIN' WHORE//// I WILL GET YOU IF IT'S THE LAST THING I DO/// CUT YOU TO PIECES//// WHORE BAGS/// STUPID CUNT////

l.      On or about March 22, 2012, defendant sent victim K.R. an e-mail message that stated in part:

> YOUR FUCKIN' ADDRESS WILL BE POSTED SOON///// YOU FUCKIN' CUNT///// I FUCKED YOUR MOTHER AND FATHER//// I WILL HACK YOU ALL TO PIECES WITH AN AXE//// YOU LOWLIFE BITCH//// YOU HAVE NO MANNERS OR PERSONALITY//// SON OF A FUCKIN' BITCH YOU ARE//// YOURE A MOTHER FUCKER///

m.     On or about March 22, 2012, defendant sent victim K.R. an e-mail message that stated in part:

> I HAVE OVER 93 ACCOUNTS ON F/B AND YAHOO// DON'T FUCK WITH ME AND DON'T PISS ME OFF/// I WILL GET YOU SOON// I FUCKED YOUR MOTHER/// YOU FUCKIN' WHORE/// NO ONE CAN STOP ME/// NOT EVEN SECURITY/// I WILL KILL YOU/// WHORE///

n.      On or about April 5, 2012, defendant sent victim K.R. an e-mail message that stated in part:

6

> <u>You want me to leave you alone? I will! Since you lied to me and I consider you a liar, I'm no longer interested in a whore like you. I'll find me another model with brains quality and knowledge since you don't have any of that. That photo of your ass is nudity!!!!!!</u>

      o.    On or about April 6, 2012, defendant sent victim K.R. an e-mail message that said that defendant had attended the birthday party of victim K.R.'s friend, which victim K.R. had also attended. Defendant then stated: "HEHEHE//// SEE YOU TONIGHT////." Defendant then criticized the victim for appearing semi-nude in a photograph, claiming that the victim was "disgrac[ing]" her family. The message concluded: "WHATS NEXT PLAYBOY OR PORN??????///// YOU DISGUST ME AND I HOPE YOU DIE IN YOUR SLEEP!!"

These above-described messages in fact caused substantial emotional distress to Victim K.R. and placed her in reasonable fear of death and of serious bodily injury to herself and her immediate family members.

Further, on or about April 8, 2012, defendant received an e-mail sent to all of the email accounts that defendant had created to threaten Victim K.R., from a private investigator hired by victim K.R. Defendant read the email, in which the investigator stated that police were investigating and instructed the defendant to stop sending harassing and threatening emails. Defendant then enlisted the help of a neighbor to erase all data from the hard drives on defendant's computers in order to destroy evidence that defendant had used those computers to conduct this offense.

## **Maximum Statutory Penalties**

7.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## **Sentencing Guidelines Calculations**

8.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding

8

the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

b.     **Offense Level Calculations.**

i.     The base offense level for the charge in Count One of the information is 18, pursuant to Guideline § 2A6.2(a).

ii.     The base offense level is increased by 4 levels, pursuant to Guideline §§2A6.2(b)(1)(C), (D), because the offense involved the threatened use of a weapon (namely, threatening to cut the victim into pieces with a hand saw and threatening to stab the victim in the victim's heart) and a pattern of stalking the same victim.

iii.     The base offense level is further increased by 2 levels, pursuant to Guideline §3C1.1, because defendant obstructed justice by enlisting a third party to erase incriminating data, including the threatening and harassing e-mail messages, from defendant's computer hard drive.

iv.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or

additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      f.     Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraphs 9(b)(i), (ii), and (iii) of this paragraph – are binding on the parties, and it shall be a breach of this Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

      g.     Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or

by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## **Agreements Relating to Sentencing**

10.     The parties jointly shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 35 months. It shall be a breach of this Agreement for either party to present or advocate a position inconsistent with this agreed sentencing recommendation.

11.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

11.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to Victim K.R. is $2,000, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

12.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's

Office of any material change in economic circumstances that might affect his ability to pay restitution.

13.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

14.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorneys' Offices for the Central District of California and the Northern District of Illinois and defendant regarding defendant's criminal liability in the above-captioned case.

15.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorneys' Offices for the Central District of California and the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

13

## Waiver of Rights

16.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

14

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

       vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

       c.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law

that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

      d.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

17.     Defendant understands that the government in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

18.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorneys' Offices regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence

for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

19.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorneys' Offices of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

20.     Defendant agrees to cooperate with the United States Attorneys' Offices in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorneys' Offices.

### Conclusion

21.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

22.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

23.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

24.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

19

25.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _January 15, 2013_


ANDRÉ BIROTTE JR.
United States Attorney for the
Central District of California


JENNIFER Y. CHOU
Assistant U.S. Attorney


LUIS PLASCENCIA
Defendant


GARY S. SHAPIRO
Acting United States Attorney for the
Northern District of Illinois


MAUREEN E. MERIN
Assistant U.S. Attorney


BETH JANTZ
Attorney for Defendant


20